# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

RANDY HAYDEN,                           §
(TDCJ-CID #539282)                      §
             Plaintiff,      §
                                     §
vs.                                     §      CIVIL ACTION H-10-0203
                                     §
BRENDA R PHILLIPS, *et al.*,            §
                                     §
             Defendants.     §

## MEMORANDUM AND OPINION

Randy Hayden, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in January 2010, alleging civil rights violations resulting from a failure to protect his safety, retaliation, denial of due process, and an inadequate grievance procedure. Hayden, proceeding *pro se* and *in forma pauperis*, sues Brenda R. Phillips, a correctional officer; Charlie D. Phillips, a correctional officer; Sergeant (fnu) Stone, a security threat group officer; Sergeant Jason D. Ford; C. McGilbra, unit grievance coordinator; Major Wayne E. Brewer; Assistant Warden Howell; Head Warden Bickham; V. L. Brisher, an assistant regional grievance coordinator; Linda Richey, an assistant regional grievance coordinator; and John Doe, an employee at the Ferguson Unit.

The threshold issue is whether Hayden's claims may proceed. This court concludes that Hayden's claims lack merit as a matter of law. The claims are dismissed and final judgment is separately entered. The reasons for these rulings are set out below.

## I.      Hayden's Allegations

On January 19, 2008, Hayden filed grievances against correctional officers Charlie and

Brenda Phillips, alleging that they violated prison rules. Hayden alleged that Brenda Phillips was spreading rumors among the general population at the Ferguson Unit that he was a "snitch," and that she targeted inmates housed near his cell. In spreading the rumors Hayden also alleges that Ford refused to place him in a safe environment or transient cell during the offender-protection investigation. On April 8, 2008, Hayden filed additional complaints against Brenda Phillips. Hayden alleged that each time Brenda Phillips learned of his new cell assignment, she again spread the rumor that he was a snitch.

Hayden filed several more complaints, which were all denied by Brewer, Howell, Brisher, and Richey. Hayden alleged that McGilbra, the unit grievance coordinator, expressed an indifferent attitude about his grievances in discussing a Step One Grievance with him. Hayden orally complained to Major Brewer, who allegedly stated that Hayden would have to be physically assaulted before there would be action on his complaints. Hayden alleged that he was forced to live under extreme conditions of fear of future harm and mental anguish. He alleged that on June 17, 2008, he was transferred in retaliation for filing grievances. Hayden alleged that after his transfer, he continued to be harassed. Hayden alleged that the retaliation has chilled his exercise of his First Amendment rights for fear of future retaliation and harassment.

Hayden has submitted a 44-page memorandum in support of his complaint with a detailed chronology of events underlying his claims. (Docket Entry No. 3). The chronology is summarized below:

> On December 25, 2007, Brenda Phillips charged Hayden with violating prison regulation #30.0 and #30.1. Charlie Phillips escorted Hayden from his cell to the sergeant's office. Charlie Phillips packed Hayden's property, and in the course of doing so, lost Hayden's $20.00 fan. Charlie Phillips also charged Hayden with possession of

an alcoholic beverage.   On January 10, 2008, Charlie Phillips approached Hayden's cell and verbally intimidated Hayden.   On January 11, 2008, Hayden filed a grievance about the property loss.

On January 11, 2008, Hayden filed a complaint with Bickham, Brewer, and Jones alleging misconduct by Brenda and Charlie Phillips.   On January 16, 2008, Hayden attended the disciplinary hearings for charges against him filed by Brenda and Charles Phillips on December 25, 2007.   Captain Pickcock dismissed the disciplinary charge of alcohol possession.   On January 18, 2008, Officer Little escorted Hayden from his administrative segregation cell to the infirmary.   At the infirmary, Brenda Phillips had a whispered conversation with Officer Little, who later asked Hayden if he had filed a grievance against Phillips.

On January 24, 2008, Captain Pickcock spoke with Hayden about the complaint he had filed on January 11, 2008.   Hayden ended the conversation because he knew that Captain Pickcock had a close personal relationship with Brenda and Charles Phillips.   On January 25, 2008, Hayden filed a grievance asserting that Charles Phillips had filed the false disciplinary case of alcohol possession as a means of intimidation.   On January 31, 2008, Hayden spoke with Bickham about the investigation of the complaint he filed on January 11, 2008. Hayden told Bickham that he had not felt comfortable talking with Captain Pickcock.   Bickham said he would send Brewer to talk with Hayden.

On February 16, 2008, Brenda Phillips stood in the hallway outside the dayroom, pointed to Hayden, and taunted him. On February 20, 2008, Brewer spoke with Hayden about the January 11, complaint he filed.   Brewer asked Hayden for the names of any witnesses.   On February 21, 2008, Hayden filed a Step One Grievance about the loss of his fan. The grievance was denied on March 27, 2008.   On February 26, 2008, Howell denied Hayden's Step One Grievance asserting a fear of staff complaint. On March 12, 2008, Hayden filed a Step Two Grievance on the same matter.   Brisher denied it on April 1.

On April 5, 2008, Brenda Phillips again told inmates that Hayden was a snitch, with the intent of having him harmed or killed.   During the week of April 6, Brenda Phillips told inmate Oleniewicz that she was searching his cell based on information Hayden had provided. Oleniewicz then told Officer Stone with the security threat group

office that Brenda Phillips was trying to harm Hayden.

On April 7, 2008, inmate Byron Brooks sent Hayden a handwritten note stating that Brenda Phillips was circulating a rumor that he was a snitch. Several inmates came to Hayden's cell door and said that Brenda Phillips had pulled them over in the infirmary hallway and told them that Hayden was a snitch. Inmate John Hinson also made similar statements about Brenda Phillips spreading this rumor. Hayden told Officer Herring that his life was in danger. Officer Herring escorted Hayden to the security threat group office to speak with Officer Ford. Ford yelled at Hayden and refused to house him in a transient cell despite the fact he had made three complaints about Brenda Phillips. Hayden gave Ford the note written by inmate Brooks. Ford submitted an Offender Protection Investigation report and attached the note.

On April 8, 2008, Hayden filed a Step One Grievance against Brenda Phillips alleging she was spreading rumors that he was a snitch. On the same date, Hayden sent a letter to the Unit's safe prison office to initiate a life-endangerment investigation. Sergeant Crystal R. Smith from the safe prisons office talked with Hayden about his complaint. Sergeant Smith told Hayden that the complaint would be referred to Brewer. Sergeant Smith placed Hayden in a transient cell pending a hearing.

On April 13, 2008, Hayden was escorted to Brewer's office to provide the names of any witnesses who could support his allegations. Hayden alleges that Brewer had the Offender Protection Investigation Report prepared by Ford. On April 6, 2008, Brewer spoke with the witnesses Hayden named, inmates Byron Brooks, John Hinson, and (fnu) Alexander, about Brenda Phillips. After a Unit Classification Committee meeting on April 15, Brewer denied Hayden's request for protection. Hayden was returned to general population at the C-block.

On April 23, 2008, Brenda Phillips was assigned to the control picket for the C-block and D-block. She pulled aside Tyrone Miles and his cell mate, who were housed next door to Hayden, and said, "You know you have a snitch, next door to you in 2-10!" (Docket Entry No. 3, p. 8). Tyrone Miles relayed his conversation with Brenda Phillips to Hayden. From April 31, to May 12, 2008, the Ferguson Unit was on lockdown status.

On May 3, 2008, Hayden filed a Step One Grievance against Warden Bickham for an arbitrary use of policy.  On May 7, 2008, Hayden asked McGilbra about an extension of time to submit his fear-of-staff complaint, which he had filed as a step one grievance on April 8. McGilbra said, "I ain't signed no extension on an O.P.I., maybe a staff complaint.  You might have wanted it as an O.P.I. but, I didn't do it that way . . . you haven't been assaulted yet have you?" (Docket Entry No. 3, p. 9).

On May 8,  Hayden complained to Brewer that Brenda Phillips was continuing to spread rumors. As Brewer walked down the hallway, he said, "Okay."   A short time later, Hayden asked Brewer to elaborate. Brewer stated, "I've investigated five  allegations and didn't find enough evidence."  Hayden asked if he had to get beaten before he could get some help, and Brewer said, "yeah."

On May 12, 2008, Howell denied Hayden's Step One Grievance.  On May 13, Hayden met with a psychologist about anxiety. On May 15, Hayden filed a Step Two Grievance complaining about Brenda Phillips's actions and Brewer's indifference.  On May 16, Hayden spoke with Officer Smith of the safe prisons office about Brenda Phillips. After talking with Hayden for thirty minutes, Smith said that matters were "out of her hands".  On June 4, Hayden met with a psychologist about his anxiety. On June 17,  Hayden learned that he would be transferred.  This transfer came five months after his first complaint.  Hayden alleges that he was transferred because of an e-mail that contained false information.

Hayden reached the Bill Clements Unit on June 19, 2008.  On June 20, at Hayden's unit-classification hearing for newly arrived offenders, Warden Adams read an e-mail stating that: "Offender Hayden exhibits . . . disruptive behavior with the ability to incite riots and create uprisings." Warden Adams relied on this e-mail as well as other unknown classification reports to influence his decision to continue Hayden's "medium custody status." Hayden alleges that he should have been eligible for placement in minimum status.

On June 22, 2008, Major Clark called Hayden to his office to discuss the e-mail, which he read aloud.  Major Clark stated that due to the higher security designation and the e-mail, he was inclined to create and keep a personal file on Hayden's behavior and activities.  Major Clark gestured to a file on the desk and stated: "that's yours!" During the interview, Major Clark allegedly stated:

a. that he was going to flag Hayden's mail for search and investigation;

b. that he was going to place Hayden on a special shakedown and move list;

c. that he might send an officer to set Hayden up; and

d. that he was going to hide Hayden behind a door, never to see sunlight again.

On June 23 and July 1, 2008, Hayden met with the psychologist about his mental anguish arising from the events from December 25, 2007 through June 22, 2008.

On June 24, 2008, Hayden submitted an inmate request about the e-mail that had served as the basis for his transfer to the Clements Unit. Hayden complained that the e-mail portrayed him in a false light. On June 30, 2008, Hayden filed a Step One Grievance about the e-mail and the decision made by the Bill Clements unit-classification committee. On July 16, Richey denied Hayden's Step Two Grievance. Warden Baker denied Hayden's Step One Grievance concerning the e-mail. On August 9, Hayden filed a Step Two Grievance over the response to the e-mail. On August 27, Sergeant Johnson searched Hayden's cell. When asked why, Johnson stated that Warden Clark had ordered the search.

On September 22, 2008, Hayden received the denial of the Step Two Grievance about the emails. Since he has arrived at the Bill Clements Unit, he has encountered three offenders from the Ferguson Unit, one of whom was aware of the events between Hayden and Brenda Phillips. Hayden alleges that there is a risk of future attacks against him due to the snitch label placed on him at the Ferguson Unit.

Between December 25, 2007 and June 17, 2008, Hayden was transferred seven times. On December 25, 2007, he was housed in A-2-10 in general population. On December 26, 2007, he was transferred to the Jester IV Unit for fourteen days after attempting to commit suicide. On January 10, 2008, he was housed in Transient A-1 for one day. On January 11, 2008, he was housed in A-2-19 for four to five days. On January 16, 2008, he was placed in solitary confinement for 29 days. This was a result of the (medium custody within general population) disciplinary hearing on December 25, 2007. On February 15, 2008, he was housed in D-2-19 for 26 days. On March 12, 2008, he was housed in D-2-7 (medium custody within general population) for 25 days. On April 8, 2008, he was housed in

6

A-3 (transient status for life endangerment) for seven days. On April 16, 2008, he was housed in C-2-10 (medium custody within general population) for 61 days. On June 17, 2008, Hayden was transferred to the Clements Unit.

Hayden complains that the defendants failed to protect his safety by refusing to transfer him to a different unit. He claims they left him in general population for 52 days after his initial complaint and 61 days after the circulation of the rumor. When asked what injuries he sustained, Hayden responded that he suffered emotional distress. (Docket Entry No. 12, Plaintiff's More Definite Statement, pp. 8 -9).

Hayden seeks $135,000.00 in punitive damages, $30,000.00 in compensatory damages and a declaratory judgment that the defendants violated his civil rights. He also seeks an injunction compelling the defendants to expunge the e-mail from his files and to be placed in safekeeping status for the rest of his confinement in TDCJ-CID.

Hayden provided the following attachments to his complaint:

(A)     a chart of retaliatory adverse acts;

(B)     a chart showing Hayden's locations during the alleged rumor circulation;

(C)     a chart showing prison officials' response times to Hayden's complaints;

(D)     Hayden's exhibits:

A.     Affidavit, Exhaustion of State Remedies.

B.     "Syllabus of Events" from December 2007 to November 2008.

C.     Disciplinary Case by Brenda Phillips, #20080126034.

D.      Disciplinary Case by Charlie Phillips, #20080126044.

E.      Hayden's Affidavit and Copy of Letter to TDCJ Administration.

F.      Grievance #2008074211 - Step One - Property Loss.

G.      Grievance #2008074211 - Step Two - Property Loss.

H.      Grievance #2008082941 - Disciplinary Appeal - Step One.

I.      Grievance #2008082941 - Disciplinary Appeal - Step Two.

J.      Grievance #2008082932 - Step One - Fear of Staff.

K.      Grievance #2008082932 - Step Two - Fear of Staff.

L.      Grievance #2008122331 - Fear of Staff - Step One.

M.      Grievance #2008122331 - Fear of Staff - Step Two.

N.      Grievance #2008170435 - Step One - E-mail/classification.

O.      Grievance #2008170435 - Step Two - E-mail/classification.

P.      Grievance #2008140082 - Step One - Lockdown/ Warden Bickham.

Q.      Copy of Hayden's Letter to TDCJ's Safe Prison Office, April 8, 2008.

R.      Affidavit, Hayden's "Testimony De Bene Esse": Three

Witness Statements.

S.    Grievances filed by Hayden from September 2005 to August 2008.

T.    Hayden's Disciplinary Cases from May 1992 to December 2007.

U.    Hayden's Psychological Records From May 13, June 4, June 23, and July 1, 2008.

V.    Hayden's Official(I-60) Request, June 24, 2008.

W.    Affidavit of Offender Wilson, September 10, 2008.

X.    Official Open Records Attempts: Hayden's Attempts to Receive E-mail: September 19, October 21, and October 30, 2008.

Y.    Letter from Offender John Hinson.

Z.    Chronological Order of Exhibits.

The records show that in disciplinary case #20080126034, Brenda Phillips charged Hayden with attempting to establish an inappropriate relationship on December 25, 2007. Hayden was charged with asking Brenda Phillips to sell him smokeless tobacco. Hayden was notified of the charges on January 11, 2008. After a disciplinary hearing on January 16, the hearing officer found Hayden guilty based on the charging officer's report and Hayden's failure to refute the charges. Hayden's punishment consisted of commissary restriction for 15 days, cell restriction for 45 days, 15 days solitary confinement; reduction in good-time earning class status from S3 to L3, and a loss of 30 days of good-time credits. (Docket Entry No. 1, Complaint, Ex. C, p. 1).

In disciplinary case #20080126044, Charlie Phillips charged Hayden with possessing an alcoholic beverage, a Level 2, Code 13 violation. He was also charged with possessing contraband, a Level 2, Code 16 violation. Hayden was notified of the charges on January 11, 2008. The disciplinary case relating to alcohol possession was dismissed. Hayden pleaded guilty to possession of contraband. His punishment consisted of a loss of recreation privileges for 45 days, loss of commissary privileges for 45 days; cell restriction for 45 days, and a loss of 30 days of good-time credits.

Hayden provided a copy of a letter dated January 14, 2008 that he wrote to the Office of the Inspector General. (Docket Entry No. 1, Complaint, Ex. E, pp. 2-10). Hayden stated that on an unspecified date, Brenda Phillips asked Hayden to starch her uniform, which he did, in violation of prison rules. According to Hayden, Brenda Phillips had a reputation for performing sexual favors for money. Hayden stated that Brenda Phillips often sat in the stairwell with her legs apart while inmates masturbated in front of her. Hayden stated that his conversations with Brenda Phillips changed to a conversation about contraband on December 25, 2007. Hayden described a conversation in which Brenda Phillips offered to sell him five cans of smokeless tobacco for $100. Hayden alleged that Charlie Phillips searched his cell and found a water bottle containing wax. Hayden stated that Charlie Phillips falsely claimed that the bottle contained wine and charged Hayden with possessing alcohol.

Hayden's grievances and responses during the period were as follows:

> (1)     January 12, 2008: Step One Grievance #2008074211, complaining of property loss. On February 19, 2008, Warden Hunter responded as follows:

Upon investigation into this matter this office is unable to establish

security staff responsible for your property loss. It appears that your property was confiscated from your cell and inventoried appropriately. Because this office was unable to determine when the property was taken from your cell, a replacement of this item is not warranted at this time.

(Docket Entry No. 1, Complaint, Ex. F, p. 2).

(2)    February 22, 2008: Step Two Grievance #2008074211, concerning the loss of property. On March 27, 2008, Linda Richey responded:

Your property claim has been investigated. There is insufficient evidence to support your claim that the Agency is responsible for your alleged property loss or that you had the claimed items in your possession at the time your property was packed and inventoried. You signed the inventory sheet when your property was delivered to you, indicating that the items listed were correct. In the absence of evidence to support your claim, action from this office is not warranted.

(Docket Entry No. 1, Complaint, Ex. G, p. 3).

(3)    January 8, 2008: Step One Grievance #2008082941, relating to the finding of guilt in disciplinary number 20080126034, charging attempting to establish an inappropriate relationship. Hayden complained of the delay between the offense date, December 25, 2007- and the hearing date- January 16, 2008. On February 22, 2008, Warden Howell responded:

Disciplinary Case #20080126034 has been reviewed and no procedural errors were identified. It appears that there was sufficient evidence to support the charge. The punishment imposed was within established guidelines; therefore, there is no valid reason to warrant overturning this case. No time limits violations noted. Due to your absence from the unit, a hearing could not be heard within 7 business days of the offense.

(Docket Entry No. 1, Complaint, Ex. H, p. 2).

(4)    March 3, 2008: Step Two Grievance #2008082941. On March 24, 2008, V. L. Brisher responded:

Major Disciplinary Case # 20080126034 has been reviewed. The disciplinary charge for code 30.0 and code 30.1 were appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence. All due process requirements were satisfied and the punishment assessed by the Disciplinary Hearing Officer was within agency guidelines. Not hearing a case within 7 days of an offense is not considered a due process error and does not warrant overturning a case. Agency policy dictates that a hearing must be held within 20 days of notification unless unforeseen circumstances arise. No further action is warranted in this matter.

(Docket Entry No. 1, Complaint, Ex. I, p. 2).

(5)   January 28, 2008: Step One Grievance #2008082932, concerning a fear of staff.  On February 26, 2008, Warden Howell responded:

Disciplinary Case #20008126044 and all investigative documentation have been reviewed. The charge against you was appropriate. No investigative, service, or procedural errors were noted. The case was presented to a fair and impartial hearing officer. Based on the evidence that was presented at the hearing, a guilty verdict was appropriate. The punishment imposed was consistent with the guidelines of the Disciplinary Rules and Procedures. The decision of the hearing officer shall stand as rendered. Your complaints against staff were investigated and no evidence was found to support your claims of harassment or retaliation. Supervisors have [sic] notified of this issue and will address with staff as needed. No action taken[.]

(Docket Entry No. 1, Complaint, Ex. J, p. 2).

(6)   March 13, 2008: Step Two Grievance  #2008082932.  On April  1, 2008, Administrator Brisher responded:

Major Disciplinary Case # 20080126044 has been reviewed. The disciplinary charge for code 16.0 was appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence. All due process requirements were satisfied and the punishment assessed by the Disciplinary Hearing Officer was within agency guidelines. You were properly advised at Step 1. No further action is warranted in this matter.

(Docket Entry No. 1, Complaint, Ex. K, p. 2).

(7)     April 8, 2008: Step One Grievance #2008122331, concerning a fear of staff and complained that Brenda Phillips was spreading rumors about him. On May 12, 2008, Warden Howell responded: "After reviewing the evidence obtained through investigation into the matter, there is not enough evidence to sustain your allegations. No action taken."

(Docket Entry No. 1, Complaint, Ex. L, p. 2).

(8)     May 15, 2008: Step Two Grievance #2008122331. On July 16, 2008, Linda Richey responded: "Your allegations of staff misconduct have been investigated by this office and there is insufficient evidence to support your claims. In the absence of evidence to support your claims, action from this office is not warranted."

(Docket Entry No. 1, Complaint, Ex. M, p. 3).

(9)     June 30, 2008: Step One Grievance   #2008170435, concerning the e-mail and classification hearing. On August 4, 2008, prison officials responded: "Your complaint has been reviewed and noted. According to Classification you will be eligible for review in December 2008. No further action is warranted."

(Docket Entry No. 1, Complaint, Ex. N, p. 2).

(10)    August 9, 2008: Step Two Grievance #2008170435.   On September 3, 2008, Administrator Roth responded:

Records indicate you are being reviewed in accordance with the Texas Department of Criminal Justice Classification Plan. Records reflect a Disciplinary Case in December 2007. The Unit Classification Committee reviews your file and reviews your overall record and bases their decision on Institutional. Adjustment and the needs of the Facility. No policy violation is noted.

(Docket Entry No. 1, Complaint, Ex. O, p. 2).

(11)    May 9, 2008: Step One Grievance #2008140082, complaining of the lockdown status of the unit. On June 17, 2008, Warden Hunter responded:

Review of your grievance, and complaints you made have been investigated. The lockdown was initiated due to staff assault and offenders' disruptive and non-complaint behavior during and after the incident. Per AD 03.31, the unit warden is authorized to implement a lockdown in an attempt to restore order, minimize threats to the safety and security of officers or offenders and suppress any serious disruption in the operation of the unit. On 5/13/08 the Unit Administration began to let the blocks off lockdown. No violation of policy noted therefore no action taken in this matter.

(Docket Entry No. 1, Complaint, Ex. P, p. 2).

## III.   The Standard of Review

A district court may dismiss a prisoner's IFP § 1983 complaint if the action is malicious or frivolous, fails to state a claim, or seeks monetary relief from a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B).   Under 28 U.S.C. § 1915(e)(2)(B)(I), the court may dismiss an IFP complaint as frivolous when it lacks an arguable basis in law or fact. *Hutchins v. McDaniels*, 512 F.3d 193, 195 (5th Cir. 2007) (citing *Black v. Warren,* 134 F.3d 732, 734 (5th Cir. 1998)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998)(quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).   The court may dismiss a frivolous claim "'before service of process or before the filing of the answer' as long as certain safeguards are met." *Brewster v. Dretke,* 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990)).

## IV.   The Failure-to-Protect Claim

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).   The Eighth Amendment imposes on

14

prison officials a duty to protect prisoners from violence from other inmates. *Id.* Prison officials are not, however, expected to prevent all inmate-on-inmate violence. *Adames v. Perez*, 331 F.3d 508 (5th Cir. 2003) (citing *Farmer*, 511 U.S. at 834). No liability exists if an official reasonably responded to a known substantial risk, "even if the harm was ultimately not averted." *Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006)(citing *Farmer*, 511 U.S. at 844). And no liability exists unless an officer was deliberately indifferent to a substantial risk of serious harm from an inmate's attack on another prisoner. *Farmer*, 511 U.S. at 837. A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. *Id.* at 837. A prison official "knows of" an excessive risk only if (1) he is aware of facts from which he could infer "that a substantial risk of serious harm exists" and (2) he in fact "draw[s] the inference." *Id.* To be deliberately indifferent, a prison official must be subjectively aware of the risk. *See id.* at 839-40. A plaintiff can rely on circumstantial evidence to prove subjective knowledge. *See Hope v. Pelzer*, 536 U.S. 730 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."); *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[.]"). Prison officials are given wide deference in the application of policies and practices designed to maintain security and preserve internal order. *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990)(citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

Hayden complains that Brenda Phillips circulated a rumor that he was a snitch, thereby endangering his safety. The Fifth Circuit has recognized that an inmate labeled as a snitch may be at increased risk of physical harm by other inmates or staff. *See Adames v. Perez,* 331 F.3d 508, 514 (5th Cir. 2003) (noting prison officials agreed that an individual who divulges information about a

gang "might be a target of violence"); *Alberti v. Klevenhagen,* 790 F.2d 1220, 1226 (5th Cir. 1986) (prisoners reluctant to come forward with information for fear of being labeled a snitch). Hayden's pleadings allege that while he was at the Ferguson Unit, he learned on April 5, 2008, that Brenda Phillips was circulating a rumor that he was a snitch. He promptly reported the threat to prison officials. On April 8, Hayden was transferred to a transient cell pending an investigation. Hayden met with security threat group officers and members of the UCC, who investigated and determined that he should be returned to general population. Hayden alleges that on April 23, 2008, Brenda Phillips again circulated rumors that he was a snitch. On May 8 and 16, 2008, Hayden spoke to prison officials about the threat. They told Hayden that the allegations were investigated and were found to be unsubstantiated. Hayden was transferred to the Clements Unit on June 19 because prison officials determined that he was exhibiting disruptive behavior.

Hayden's own pleadings indicate that prison officials responded expeditiously on learning of a potential threat to his safety. Hayden has not alleged a basis to infer that the defendants knew of, and disregarded, a substantial risk to his health and safety. Hayden alleges that after he complained in April 2008, that Brenda Phillips had labeled him as a snitch, and placed his life in danger, prison officials investigated and transferred him to different locations within the unit. Prison officials placed Hayden in a safe location while they investigated, taking steps to protect him during the investigation. By his own admission, Hayden was transferred seven times between December 25, 2007 and June 17, 2008.[1] Prison officials ultimately transferred Hayden from the Ferguson Unit.

---

[1]    Hayden provides the following list of transfers(Docket Entry No. 12, Plaintiff's More Definite Statement, p. 10):
   (1)    On December 25, 2007, he was housed in A-2-10 in general population.
   (2)    On December 26, 2007, he was transferred to the Jester IV Unit for 14 days after attempting to commit suicide.

Hayden does not allege that he was physically harmed or ever threatened by fellow inmates. That prison officials were ultimately able to prevent Hayden from being assaulted undercuts his claim that prison officials were deliberately indifferent to his safety. No liability exists if an official reasonably responded to a known substantial risk, "even if the harm was ultimately not averted." *Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006)(citing *Farmer*, 511 U.S. at 844). The defendants evaluated Hayden's claims concerning being labeled as a "snitch," conducted investigations, and determined that the allegations were unfounded. Hayden's failure-to-protect claim lacks merit as a matter of law and is dismissed.

## V.    The Retaliation Claim

Prison officials may not retaliate against an inmate for exercising his right of access to the courts or complaining to a supervisor about a prison employee or official. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). To prevail on a retaliation claim, an inmate must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for exercising that right, (3) a retaliatory or adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the

---

(3)    On January 10, 2008, he was housed in Transient A-1 for 1 day. This was temporary housing.

(4)    On January 11, 2008, he was housed in A-2-19 for 4 to 5 days. This was general population.

(5)    On January 16, 2008, he was placed in solitary confinement for 29 days. This was a result of the disciplinary hearing on December 25, 2007.

(6)    On February 15, 2008, he was housed in D-2-19 for 26 days. This was medium custody in general population.

(7)    On March 12, 2008, he was housed in D-2-7 for 25 days. This was medium custody of general population.

(8)    On April 8, 2008, he was housed in A-3 for 7 days. This was transient status for life in danger by Safe Prison's Office.

(9)    On April 16, 2008, he was housed in C-2-10 for 61 days. This was medium custody in general population.

(10)   On June 17, 2008, he was transferred to the Clements Unit.

retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997)(quoting *Woods,* 60 F.3d at 1166), *cert. denied,* 522 U.S. 995, 118 S. Ct. 559 (1997). Conclusory allegations of retaliation are insufficient to withstand a motion for summary judgment. *Woods,* 60 F.3d at 1166. "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson v. Rodriguez,* 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods v. Smith,* 60 F.3d at 1166 (internal quotation marks omitted).

Some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Morris v. Powell,* 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n.10 (1998)). *Id.* Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis,* while a transfer to a more dangerous unit might rise to a level of an adverse retaliatory act. *Id.* at 687. Retaliation is actionable only if it "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early,* 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted).

Hayden alleges that Charlie Phillips retaliated against him because he had tried to establish an inappropriate relationship with Brenda Phillips. Hayden alleges that Brenda Phillips retaliated against him for complaining about her behavior. Hayden claims that she had knowledge of the grievances he filed, and that she had no other reason to "slander his name." Hayden alleges that Brewer and Bickham placed false documents in his file to justify transfer.

Hayden bases his retaliation claim on a series of incidents spread over months.  Brenda Phillips charged him with a disciplinary violation arising from events on December 25, 2007. Charlie Phillips escorted Hayden from his cell to prehearing detention and, while packing Hayden's property, confiscated a bottle and charged Hayden with the disciplinary offense of alcohol possession.  Hayden was found guilty of attempting to establish an inappropriate relationship with Brenda Phillips on January 16, 2008.  The disciplinary case for possession of alcohol was dismissed, but Hayden was found guilty of possession of contraband.  On April 5, 2008, Brenda Phillips circulated a rumor that Hayden was a snitch.  On April 16, 2008, a Unit Classification Committee determined that Hayden faced no increased danger and could be transferred from transient status to general population.  On April 23, 2008, Brenda Phillips circulated the same rumor to different inmates.  On June 19, 2008, Hayden was transferred from the Ferguson Unit to the Clements Unit.

These events do not give rise to an inference of retaliation.  The fact that one event follows another in time does not show retaliation.  *Enlow v. Tishomingo Cnty., Miss.*, 45 F.3d 885, 889 (5th Cir. 1995).  When asked to provide specific facts that lead him to believe the defendants' acts were done in retaliation and not for some other reason, Hayden responded, "due to plaintiff's specific complaints grievances and personal interaction with defendants deliberately indifferent attitude toward B. Phillips continual acts of slander against plaintiff, there could be no other justification as to why they behaved in such a manner." (Docket Entry No. 12, Plaintiff's More Definite Statement, p. 15). Such a conclusory allegation is insufficient.

To the extent Hayden relies on the decision to transfer him as an element of a retaliation claim, the claim fails.  The transfer from the Ferguson Unit to the Clements Unit  was not adverse, as a matter of law. *Bibbs v. Early,* 541 F.3d 267, 272 (5th Cir. 2008), *Morris,* 449 F.3d at 685.  And

The record does not support an inference that but for the alleged retaliatory motive, the transfer would not have occurred.  Hayden's pleadings show that he was transferred to the Clements Unit because he was engaging in disruptive behavior at the Ferguson Unit.  Hayden has not established that but for the defendants' alleged retaliatory motive, he would not have been transferred from the Ferguson Unit to the Clements Unit.

Hayden has not identified or submitted  competent evidence of a retaliatory motive by the defendants. Nor has he alleged a chronology of events from which retaliation may be plausibly inferred.  Hayden's claims amount to his personal belief that he was the victim of retaliation. Hayden's conclusory allegations are insufficient to show that the defendants retaliated against him for exercising his right to file grievances. And Hayden has not proffered any evidence that the alleged acts of retaliation impeded his access to the courts or chilled his efforts to litigate. *Johnson v. Rodriguez*, 110 F.3d 299, 314 (5th Cir. 1997).  Hayden's pleadings show that he continued to file grievances after he was transferred to the Clements Unit.  (Docket Entry No. 1, Complaint, Ex. S, p. 1).

Hayden's retaliation claim lacks merit and is dismissed.

## VI.   The Due Process Claims

Hayden alleges that Brewer, Howell, Brisher, and Richey violated his civil rights by failing to resolve the complaints presented in his grievances.  "A prisoner has a liberty interest only in freedoms from restraint imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (internal citation and quotation omitted).  An inmate does not have a constitutionally protected liberty interest in having grievances resolved to his satisfaction.  There is no due process violation when prison

officials fail to do so. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Edmond v. Martin, et al.*, slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v. Lensing, et al.*, slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). The defendants' alleged failure to address the grievances to Hayden's satisfaction did not violate his constitutional rights.   Moreover, the record shows that Brewer, Howell, Brisher, and Richey investigated Hayden's grievances and provided timely responses. Hayden's due process claim based on an inadequate grievance procedure lacks merit.

Hayden also alleges that Charlie Phillips confiscated a $20.00 fan from his cell and subsequently lost it.  This claim is barred by *Hudson v. Palmer*, 468 U.S. 517 (1984) and  *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).   Under these cases, deprivations of property caused by alleged misconduct by state prison officials, do not infringe constitutional due process provided that adequate state post deprivation remedies exist. *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995). In Texas, when an inmate's property is taken without compensation, he has a remedy in state court, not a federal court claim under 42 U.S.C. § 1983 for loss or damage to property.  An exception applies if the inmate shows that there is no postdeprivation remedy or the remedy is inadequate. *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984).  Hayden has made neither of the required showings.

Moreover, the record contradicts Hayden's allegations.  His exhibits show that prison officials conducted an investigation and concluded that there was no evidence suggesting that correctional staff was responsible for the loss of  property.  Prison officials noted that Hayden acknowledged receipt of all of his property and made no complaint that his fan was missing at that

time. (Docket Entry No. 1, Complaint, Ex. G, p. 3).

Hayden's due process claims are dismissed.

## VII.   The Respondeat Superior Claim

Hayden claims that Bickham and Brewer failed to supervise officers under their authority.
(Docket Entry No. 3, Plaintiff's Memorandum, pp. 29-30).  Individual liability under § 1983 may
not be based on a supervisor's vicarious liability for the acts or omissions of employees.  *Coleman
v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997).  Supervisory officials may be liable
if their own action or inaction, performed with a certain degree of culpability  proximately causes
a constitutional violation.  *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).  To
establish individual liability as to Bickham and Brewer, Hayden would have to show either (1)
personal involvement in the alleged wrongful acts, or (2) that these defendants implemented a policy
that resulted in the deprivation of his constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544
(5th Cir. 1998).

Hayden has alleged that these defendants were personally involved in the violation of his
right to due process.  As noted, a supervisor may be held liable if he is either personally involved in
the constitutional deprivation or there is a sufficient causal connection between the supervisor's
wrongful conduct and the constitutional violation. *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200
(5th Cir. 1999); *Thompkins,* 828 F.2d at 304.  The plaintiff must show that the official's act, or
failure to act, either caused or was the moving force behind the plaintiff's harm, *Smith v. Brenoettsy,*
158 F.3d 908, 911 (5th Cir. 1998), and that the supervisor acted with at least  deliberate indifference.
*Alton,* 168 F.3d at 200.  "For an official to act with deliberate indifference, 'the official must both
be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.'" *Brenoettsy*, 158 F.3d at 911. "The standard of deliberate indifference is high." *Id.* (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998)). Hayden has made no showing that these defendants were aware of and disregarded a substantial risk to his safety. Nor has Hayden shown that these defendants implemented a policy so deficient that the policy itself acted as a deprivation of constitutional rights. *Cronn*, 150 F.3d at 544. And Hayden has not shown a causal connection between actions by Bickham and Brewer and the alleged constitutional violations. The claims against Bickham and Brewer are dismissed.

## VIII.   The Claims Against the Defendants in Their Official Capacities

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court. *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). This bar remains in effect when state officials are sued for damages in their official capacity. *Cory v. White*, 457 U.S. 85, 90 (1982). Hayden sues all of the defendants for damages in their official capacities. Those claims are barred by the Eleventh Amendment.

The Eleventh Amendment does not bar Hayden's claim for prospective relief. But for this claim to proceed, there must be a showing that a TDCJ-CID policy caused the alleged violation of constitutional rights. There has been no such showing. Hayden's claims for injunctive relief are dismissed. *Hafer v. Melo*, 502 U.S. 21, 25 (1991)(quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)).

## IX.   Conclusion

The action filed by Randy Hayden (TDCJ-CID Inmate #539282) lacks an arguable basis in law. His claims are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(I). Hayden's motion

for a temporary restraining order, (Docket Entry No. 13), is denied. Hayden's motion for leave to proceed with discovery, (Docket Entry No. 16), is denied as moot. Any remaining pending motions are denied as moot.

The Clerk of Court will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

(1)    the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

(2)    the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3)    the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-Strikes List.

SIGNED on December 23, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge